UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| LARRY HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:07-cv-0085-DFH-TAB |
| | ) | |
| OFFICER J. HARTLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion for Summary Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment must be **denied.**

**I. Background**

The plaintiff in this action is Larry Hunter ("Hunter"). The defendant is Officer J. Hartley, who is employed by the Indiana Department of Correction at the Pendleton Correctional Facility ("Pendleton"), which is an Indiana prison. Hunter's claim in this case is that Officer Hartley failed to protect him from or respond appropriately to an attack against Hunter by other inmates in Pendleton's K5 dormitory. Hunter seeks compensatory and punitive damages. The inmates who assaulted Hunter are identified as Larry Jackson and T. Nunn.

Officer Hartley seeks resolution of Hunter's claim through the entry of summary judgment. Such motion must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting FED. R. CIV. P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997)).

## II. Statement of Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Hunter as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

1. Hunter is currently confined at the Westville Correctional Facility, but at the time pertinent to his claim in this case was confined at Pendleton.

2. Pendleton is a prison operated by the Indiana Department of Correction ("DOC").

3. On August 22, 2005, Officer Hartley was a correctional officer employed by the DOC at Pendleton.

4. On August 22, 2005, Officer Hartley was assigned to monitor Pendleton's K5 and K6 dormitories. Those dormitories are large, barrack-like rooms with approximately fifty and forty beds, respectively.

5. The K5 and K6 dormitories contain their own restroom area, with toilets, sinks, and showers.

6. The K5 and K6 dormitories are on opposite sides of a hallway and are oriented such that their entry ways face each other. At the entry way to each dormitory is a gate which is normally locked.

7. On August 22, 2005, a desk in the hallway between the entrances of the K5 and K6 dormitories was designated to be the post of the officer assigned to monitor the K5 and K6 dormitories. The desk was situated such that an officer sitting at the desk could not see into either dormitory beyond the immediate area on the other side of the entry ways. The desk was oriented such that the officer sitting at the desk would face perpendicular to the dormitory entrances, that is, not facing the entrances to the K5 and the K6 dormitories.

8. On August 22, 2005, surveillance cameras were not installed in either the K5 or the K6 dormitories.

9. As the correctional officer assigned to monitor the K5 and K6 dormitories, Officer Hartley possessed keys to unlock the gates at the entrances of the K5 and K6 dormitories. Additionally, Officer Hartley was responsible for enforcing policy prohibiting offenders from moving throughout the prison without permission. Accordingly, Officer Hartley did not permit offenders to leave the dormitory without a pass absent an emergency situation. In addition, Officer Hartley did not permit offenders to leave the dormitory to go to the infirmary without a medical pass.

10. As monitor of the K5 and K6 dormitories, it was Officer Hartley's practice to facilitate offenders' legitimate efforts to obtain passes, such as by calling the infirmary to request a medical pass on behalf of an offender who told the defendant he wanted

       to go to the infirmary. Whenever Officer Hartley called the infirmary to request a medical pass on behalf of an offender, the infirmary personnel routinely asked for a medical reason to be provided before a medical pass would be issued. Accordingly, it was Officer Hartley's practice to ask the offender to tell the defendant the reason he wanted to go to the infirmary before the defendant would call the infirmary to request a medical pass.

11. At approximately 4:30 p.m. on August 22, 2005, Hunter was in K-5 dormitory and was beaten by other offenders. He struggled to what has been described here as the immediate area near the entry way which was accessible to the hallway via a gate and which was observable from the desk at which the monitoring correctional officer was stationed–Officer Hartley, in this instance.

12. Officer Hartley observed Hunter from the desk to which he was assigned. Hunter was calling out during the assault for the door (gate) to be opened. Instead of opening the gate, however, Officer Hartley left the area for 25-30 minutes, having been observed to go down a stairway.

13. The assault on Hunter continued, with him being dragged by his feet into the restroom in K-5 dormitory. Hunter was seriously injured during the course of the assault.

14. Hunter made his way back to the area near the entry way which was accessible to the hallway via a gate. He stood there bleeding and calling out to Officer Hartley to help him. Hunter reported to Officer Hartley that he had been assaulted. Officer Hartley radioed the control room of a Code 10-10, which is the DOC's radio code to report a fight in progress between offenders. Shortly thereafter, additional staff arrived and Hunter was escorted from the K5 dormitory to the infirmary to be checked for injuries.

15. Once removed from the K-5 dormitory to the infirmary, Hunter was taken to an outside hospital for assessment and treatment of the injuries he suffered during the assault.

### III. Discussion

       Hunter's claim is asserted pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). The pertinent constitutional provision involving Hunter's claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (citations and internal punctuation omitted). The official must have actual knowledge of "a substantial risk of serious harm." *Id.* When one inmate attacks another, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen . . . ." *Halley v. Gross,* 86 F.3d 630, 640 (7th Cir. 1996). To be liable, "the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Armstrong v. Squadrito,* 152 F.3d 564, 577 (7th Cir. 1998). "Knowledge of a risk can be shown if an official was exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference." *Pierson v. Hartley,* 391 F.3d 898, 902 (7th Cir. 2004); see also *Boyce v. Moore,* 314 F.3d 884, 888 (7th Cir. 2002).

Construing the present evidentiary record most favorably to Hunter as the non-movant, Officer Hartley acquired knowledge of the assault of Hunter when Hunter struggled to the entry way, but instead of acting reasonably to extricate Hunter from continued danger of further assault Officer Hartley ignored the danger to Hunter, went blithely down a stairway, and returned many minutes later. Only then, when Hunter was again observable by Officer Hartley and had suffered the additional assault in the restroom, did Officer Hartley summon help. With this view of the evidence, Officer Hartley's conduct on August 22, 2005, falls within the rule that "[a] correctional officer's presence at an attack of an inmate, where he does nothing to stop an assault, may be sufficient to establish a claim under Section 1983." *Williams v. Russo,* 2009 WL 185758, *3 (W.D.N.Y. 2009)(citations omitted). The material disputed questions of fact requiring a trial here are what did Officer Hartley learn about Hunter being assaulted, when did Officer Hartley learn of that assault, and what did Officer Hartley do or fail to do once possessed of that knowledge.

The motion for summary judgment (dkt 26) is **denied.**

So ordered.

_David F. Hamilton_
DAVID F. HAMILTON, Chief Judge
United States District Court

Date: 3/13/09

Distribution:

INDIANA STATE ATTORNEY GENERAL
cory.voight@atg.in.gov

Larry Hunter, DOC #920924
Westville Correctional Facility
P.O. Box 473
Westville, IN 46391-0473